UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


D'JUAN GARRETT,

        Petitioner,

                                CASE NO. 2:09-CV-11076

    v.                            JUDGE VICTORIA A. ROBERTS

                                MAGISTRATE JUDGE PAUL J. KOMIVES

JOHN PRELESNIK,

        Respondent.

_____/


# REPORT AND RECOMMENDATION


*Table of Contents*

I.     RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II.    REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     A.    *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     B.    *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
     C.    *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
     D.    *Waiver of Jury Trial* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
          1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
          2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
     E.    *Corporeal Lineup* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
          1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
          2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
     F.    *Waiver of Complainant's Testimony* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
          1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
          2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
     G.    *Newly Discovered Evidence* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
          1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
          2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
     H.    *Ineffective Assistance of Counsel Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
          1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
          2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
              a.    *Waiver of Jury Trial* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
              b.    *Waiver of Complainant's Testimony* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
              c.    *Failure to Investigate and Present Exculpatory Eyewitness* . . . . . . . . . . . . . . 20
     I.    *Evidentiary Hearing* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
     J.    *Recommendation Regarding Certificate of Appealability* . . . . . . . . . . . . . . . . . . . . . . . . . . 23
          1.    *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
          2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
     K.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
III.   NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

I.      RECOMMENDATION: The Court should deny petitioner's application for the writ of habeas corpus. The Court should also deny petitioner a certificate of appealability.

II.     REPORT:

A.      *Procedural History*

1.          Petitioner D'Juan Garrett is a state prisoner, currently confined at the Richard A. Handlon Correctional Facility in Ionia, Michigan.

2.          On June 24, 2004, petitioner was convicted of Assault With Intent to Commit Murder, MICH. COMP. LAWS § 750.83, and Felony Firearm, MICH. COMP. LAWS § 750.277b, following a bench trial in the Wayne County Circuit Court.  On July 15, 2004, he was sentenced to consecutive terms of fifteen to thirty years' imprisonment and two years' imprisonment.

3.          Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

> I.      [Petitioner] is entitled to a new trial because his purported waiver of jury trial was involuntary where he was forced to choose on the day set for trial between a bench trial in front of Judge Hathaway, or a jury trial in front of Judge Townsend.
>
> II.     [Petitioner] was denied due process of law when the trial court denied his motion for a corporeal line-up.
>
> III.    [Petitioner's] state and federal right to confrontation, right to effective assistance of trial counsel, and right to a fair trial was [sic] violated when counsel denied defendant the right to confront his accuser.
>
> IV.     [Petitioner's] state and federal right to confrontation and right to a fair trial was [sic] violated when the trial court abused its discretion by allowing trial counsel to w[a]ive the complaining witness from testifying.

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence.  *See People v. Garrett*, No. 257103, 2005 WL 3478153 (Mich. Ct. App. 2005) (per

curiam).

4.        Petitioner, proceeding *pro se*, sought leave to appeal these issues to the Michigan Supreme Court. The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Garrett*, 475 Mich. 885, 715 N.W.2d 882 (2006).

5.        On November 2, 2006, petitioner filed a motion for relief from judgment in the trial court pursuant to MICH. CT. R. 6.500-.508, raising the following claims:

> I.    Trial Counsel was ineffective for failing to investigate and present Antoine Robinson to testify that Petitioner was not the shooter.

> II.    Due process required relief from Petitioner's conviction given that newly-discovered evidence.

On December 8, 2006, the trial court denied petitioner's motion for relief from judgment. *People v. Garrett*, No. 03-12254-01 (Wayne Cty. Cir. Ct. Mich. Dec. 8, 2006). The Michigan Court of Appeals and Michigan Supreme Court denied petitioner's applications for leave to appeal in standard orders, based on petitioner's "failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Garrett*, 482 Mich. 987, 755 N.W.2d 652 (2008); *People v. Garrett*, No. 282182 (Mich. Ct. App. 2008).

6.        Petitioner, proceeding with counsel, filed the instant application for a writ of habeas corpus on March 23, 2009. As grounds for the writ of habeas corpus, he raises the following seven claims:

> I.    Petitioner Garrett is entitled to habeas relief because his purported waiver of jury trial was involuntarily made.

> II.    Petitioner Garrett was denied due process of law when the trial court denied his motion for a corporeal line-up, resulting in an in-court identification procedure that was unduly suggestive.

> III.    Petitioner Garrett was denied his right to due process, a fair trial, and

confrontation when the court waived the testimony of the complainant via counsel and without petitioner's consent.

IV.     Petitioner Garrett was deprived of his right to effective assistance of counsel when his trial attorney waived his right to confront the complainant without his consent.

V.      Petitioner Garrett was deprived of his right to effective assistance of counsel when his trial attorney failed to investigate and present an eyewitness who would testify that Petitioner Garrett was not the shooter.

VI.     The newly discovered evidence of Robinson as a witness with exculpatory evidence requires relief from Petitioner's conviction as a matter of due process and a fair trial.

VII.    Petitioner is entitled to an evidentiary hearing.

7.      Respondent filed his answer on October 30, 2009. He contends that petitioner's claims are procedurally defaulted or without merit.

8.      Petitioner filed a reply to respondent's answer on February 5, 2010.

B.      *Factual Background Underlying Petitioner's Conviction*

This case arose out of the shooting of James McMann on September 19, 2003. The record indicates that petitioner approached the car that Mr. McMann was driving and shot him in the head three times. Jennifer Freund, Vincent Johnson, and Antoine Robinson were in the car with Mr. McMann when petitioner approached. Petitioner was convicted of Assault with Intent to Commit Murder and Felony Firearm. The following summary of facts surrounding petitioner's trial was set forth in the Michigan Court of Appeals opinion:

A. Waiver of Jury Trial

Garrett was charged with intent to commit murder, felony-firearm, and being a felon in possession of a firearm in connection with the shooting of Jamie McMann in Detroit in September [2003]. Garrett was originally scheduled to have a jury trial before Wayne County Circuit Judge Michael M. Hathaway. However, on the day Garrett's trial was scheduled to start, Judge Hathaway was still presiding over another continuing jury trial. Garrett was given the choice to be transferred to another court for a jury trial or to have a bench trial with Judge Hathaway. It was proposed that if there were a bench trial, the parties would put their opening statements on the record that day and start the bench trial the next day. Garrett's attorney stated that he had spoken to Garrett without making any promises, and that Garrett preferred to stay with Judge Hathaway. Garrett was brought before Judge Hathaway, and the following exchange ensued:

*The Court*: And it's my understanding from what your lawyer just said that you wish to waive your right to a trial by jury and have a bench trial, is that correct?

*Defendant*: Yes.

*The Court*: Now you understand of course, in any kind of trial you have, you're presumed innocent until proven guilty beyond a reasonable doubt and it's the prosecutor's burden to prove you guilty beyond a reasonable doubt. But in a bench trial, or a waiver trial, I'm the only one making the decision, do you understand that?

*Defendant*: Yes.

*The Court*: There's no jury. If you had a jury trial, all twelve jurors would have to agree unanimously that you were guilty of the crime they found you guilty of, do you understand that?

*Defendant*: Yes.

*The Court*: All right, you're comfortable with a waiver trial?

*Defendant*: Yes.

*The Court*: All right, now has anybody promised you anything or threatened you or twisted your arm in any way to get you to give up your right to a jury trial?

*Defendant*: No.

*The Court*: And nobody's told you that I would be lenient with you if you waived your right to a jury trial and give you breaks or anything?

*Defendant*: No.

*The Court*: All right, you're waiving your rights freely and voluntarily?

*Defendant*: Yes.

*The Court*: This is your signature on the waiver form?

*Defendant*: Yes.

## B. Court-Ordered Lineup

At a pretrial hearing, Garrett moved for an adjournment, in part, because he requested a court-ordered lineup. Garrett requested the lineup because he suspected witness coaching with regard to witness Jennifer Freund's identification of the shooter. The trial court denied the request for a lineup because Freund had already testified at the preliminary hearing that she knew Garrett before the shooting and, therefore, there was no reason for a lineup.

## C. Waiver of Witness

> During the trial, the prosecution requested tha[t] Jamie McMann be waived as a witness. The prosecutor stated that he had spoken with McMann, and McMann had no independent recollection of the shooting. Garrett's attorney did not object to the waiver and stated that he too spoke with McMann, in the presence of McMann's mother, and that McMann indicated that he had no "information that would assist us with today's hearing."

*People v. Garrett*, No. 257103, 2005 WL 3478153, at *1-*2 (Mich. App. Dec. 20, 2005).

C.    *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a

result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts

them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.      *Waiver of Jury Trial*

1.      *Clearly Established Law*

"[T]he right to jury trial in serious criminal cases is a fundamental right and hence must be recognized by the States as part of their obligation to extend due process of law to all persons within their jurisdiction." *Duncan v. Louisiana*, 391 U.S. 145, 154 (1968)."Because the right to a jury trial is a fundamental right, there must be no doubt that any waiver of the right is made knowingly, intelligently, and voluntarily." *Spytma v. Howes*, 313 F.3d 363, 370 (6th Cir. 2002). As the Sixth Circuit explained, "[f]or waiver to be voluntary, knowing and intelligent, the defendant must possess a minimum amount of knowledge concerning his jury trial right and the mental capacity to understand the implications of waiver of that right." *Id.* However, the Constitution requires neither an oral colloquy between the court and the defendant, nor any particular form of waiver. *See Fitzgerald v. Withrow*, 292 F.3d 500, 504 (6th Cir. 2002); *Spytma*, 313 F.3d at 370. Further, "[t]echnical knowledge of the jury trial right is not required for waiver to be effective." *Spytma*, 313 F.3d at 370 (internal quotation omitted). In short, "there is a knowing and intelligent waiver where the defendant 'understood that the choice confronting him was, on the one hand, to be judged by a group of people from the community, and on the other hand, to have his guilt or

innocence determined by the judge.'" *Sowell v. Bradshaw*, 372 F.3d 821, 836 (6th Cir. 2004) (quoting *United States v. Sammons*, 918 F.2d 592, 597 (6th Cir. 1990) (internal quotation omitted)).

2.    *Analysis*

Petitioner claims that the waiver of his right to a jury trial was involuntary. He raises two arguments in support of this claim. He first contends that his counsel's representation that he would receive a longer prison sentence if convicted in a jury trial before Judge Townsend than he would if convicted in a bench trial before Judge Hathaway had the effect of coercing his jury waiver. Ineffective assistance of counsel in advising a defendant to waive his jury trial, however, is a distinct claim, which should not be commingled with the jury waiver issue. *See Sowell*, 372 F.3d at 831. Rather, a court must consider each claim separately on the merits." *Id.* Thus, petitioner's ineffective assistance of counsel claim with respect to jury waiver is addressed separately in part I.2.a, *infra*.

Petitioner's second contention is that the threat of being sent to another judge if he chose not to waive his right to a jury trial rendered his decision involuntary because "[e]ven Judge Hathaway was aware of the Hobson's choice of having a bench trial before him, or sending him to Judge Townsend for a jury trial." Pet'r's Br., at 10-11. However, it is well established that "a defendant does not have a right to have his case heard by a particular judge," nor does a defendant "have the right to have his judge selected at random by a draw." *Sinito v. United States*, 750 F.2d 512, 515 (6th Cir. 1984); *accord United States v. Pearson*, 203 F.3d 1243, 1256-57 (10th Cir. 2000); *United States v. Gallo*, 763 F.2d 1504, 1531 (6th Cir. 1985); *United States v. Edwards*, 39 F. Supp. 2d 692, 707-08 & nn. 46-48 (M.D. La. 1999) (discussing cases); *State v. Peterson*, 553 A.2d 672, 678-79 (Md. 1989) (same). Further, a defendant who alleges that the assignment to a particular judge was improper must "point to some resulting prejudice." *Sinito*, 750 F.2d at 515; *accord Pearson*, 203

F.3d at 1262; *United States v. Simmons*, 476 F.2d 33, 35 (9th Cir. 1973).

Here, petitioner had no right to have his trial conducted by the originally assigned judge, and he has made no showing that he would have been prejudiced by the transfer of the case. Aside from petitioner's claim that his trial counsel told him that Judge Townsend would give him a long prison sentence, there is no allegation that Judge Townsend would have been biased against him or otherwise disqualified from presiding over his case. As the Michigan Court of Appeals noted, "[petitioner] has not established that being told to choose between a bench trial before Judge Hathaway and a jury trial before Judge Townsend effectively forced him to choose the bench trial." *People v. Garrett*, No. 257103, 2005 WL 34785153, at *2 (Mich. App. Dec. 20, 2005). Further, though petitioner claims that the waiver put on record was a "sham," his sworn testimony indicates that his waiver was voluntary, intelligent, and knowing. After explaining the difference between a jury trial and a waiver trial, the court asked petitioner if he was comfortable with a waiver trial. Petitioner replied, "Yes." The court then asked petitioner if anyone had promised him anything or threatened him in any way to get him to give up his right to a jury trial. Petitioner answered, "No." It was only after the court questioned petitioner to ensure that he was freely waiving his right to a jury trial that the court accepted his waiver. Waiver Trial Tr. dated June 23, 2004, Vol. I, 4-6. It is clear from the record that, though petitioner may have preferred to have a jury trial before Judge Hathaway, he understood when he waived his right to a jury trial that he was choosing between being judged by a group of people from the community and having his guilt or innocence determined by a judge. *See Sowell*, 372 F.3d at 836. Accordingly, petitioner is not entitled to habeas relief on this claim. *See Pearson*, 203 F.3d at 1262.

E.      *Corporeal Lineup*

1.      *Clearly Established Law*

A pretrial identification procedure violates the Constitution if "the confrontation conducted . . . was so unnecessarily suggestive and conducive to irreparable mistaken identification that [the defendant] was denied due process of law." *Stovall v. Denno*, 388 U.S. 293, 301-02 (1967). Similarly, a subsequent in-court identification following an impermissibly suggestive pretrial identification is unconstitutional if the pretrial "identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384 (1968). *See generally*, *Neil v. Biggers*, 409 U.S. 188, 197-98 (1972). A suggestive lineup alone, however, does not require exclusion of identification evidence. "The admission of testimony concerning a suggestive and unnecessary identification procedure does not violate due process so long as the identification possesses sufficient aspects of reliability." *Manson v. Brathwaite*, 432 U.S. 98, 106 (1977). Thus, the central question in a case where the pretrial identification procedure is impermissibly suggestive is "whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." *Biggers*, 409 U.S. at 199; *accord Manson*, 432 U.S. at 114. The factors relevant to this "totality of the circumstances" analysis include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Biggers*, 409 U.S. at 199-200; *accord Manson*, 432 U.S. at 114.

Thus, a court must "follow[] a two-step analysis in determining whether an identification is admissible." *United States v. Crozier*, 259 F.3d 503, 510 (6th Cir. 2001). First, the court must "consider whether the identification procedure was suggestive." *Id.* If it was not, the "identification

testimony is generally admissible without further inquiry," and any question as to the reliability of the identification "goes to the weight of the evidence, not its admissibility." *United States v. Maldonado-Rivera*, 922 F.2d 934, 973 (2d Cir. 1990). If, on the other hand, the procedure was suggestive, the court must "then determine whether, under the totality of the circumstances, the identification was nonetheless reliable and therefore admissible." *Crozier*, 259 F.3d at 510.

2.     *Analysis*

In his habeas application, petitioner claims that the trial court violated his right to due process when it denied his request for a corporeal lineup. Petitioner moved for a lineup because he alleged that members of his family had observed witness coaching during Ms. Freund's preliminary examination in the form of a head nod when she was asked if she could see the shooter in the courtroom. Petitioner argues that by denying his request for a lineup, and proceeding with an in-court identification, the court allowed Ms. Freund to identify petitioner under unduly suggestive circumstances. While petitioner recognizes that there is no constitutional right to a lineup, he argues that there are due process restraints on a judge's discretionary power to deny an in-court lineup. He claims that a lineup was "critical" under the circumstances of this case because Ms. Freund could not have had a good look at the perpetrator's face when the crime occurred because he was wearing a hooded sweatshirt, and because the description Ms. Freund gave the police soon after the shooting did not match petitioner. Pet'r's Br., at 16.

Because there was no lineup, but only an in-court identification by Ms. Freund, the question is whether the in-court identification was tainted by an impermissibly suggestive pretrial identification procedure. The Court should conclude that it was not. The only argument petitioner puts forth for the preliminary examination being unduly suggestive is that his family members

witnessed a head nod when Ms. Freund was asked if the shooter was in the courtroom. Even if

petitioner's allegations regarding the head nod are true, under the totality of the circumstances, the

identification was still reliable. Ms. Freund knew petitioner prior to the shooting and she had the

opportunity to observe him and hear his voice during the shooting. Because the pretrial

identification of petitioner was not unduly suggestive under the totality of the circumstances, the in-

court identification was not tainted. As I have previously explained,

> the Supreme Court has never held that an in-court identification requires an
> independent basis for admission in the absence of an antecedent improper pre-trial
> identification. Rather, "[g]enerally, if identification procedures prior to trial were not
> unduly suggestive, questions as to the reliability of a proposed in-court identification
> affect only the identification's weight, not its admissibility." *United States v.
> Matthews*, 20 F.3d 538, 547 (2d Cir. 1994). Thus, "[a]ny suggestiveness in the
> courtroom identification procedure is a matter for the [trier of fact] to consider in
> weighing the persuasiveness of the witness's testimony." *Romero v. Tansy*, 46 F.3d
> 1024, 1032 (10th Cir. 1995); *see also*, *McFowler v. Jaimet*, 349 F.3d 436, 450 n. 3
> (7th Cir. 2003).

*Cameron v. Birkett*, 348 F. Supp. 2d 825, 843 (E.D. Mich. 2004) (Gadola, J., adopting report of

Komives, M.J.); *see also*, *Long v. Donnelly*, 335 F. Supp. 2d 450, 459 (S.D.N.Y. 2004). Here, the

witness's in-court identification was subject to cross-examination by petitioner's counsel. Any

suggestiveness in the courtroom identification was a matter for the trier of fact in assessing the

weight to be given the witness's testimony, not a matter of admissibility.

Nor is petitioner entitled to habeas relief based on the failure of the police to place him in a

line-up to be viewed by Ms. Freund. It is well established that habeas corpus is not available to

remedy a state court's error in the application of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-

68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to

reexamine state-court determinations on state-law questions."). Regardless of whether state law

conferred on petitioner a right to participate in a line-up, a criminal defendant "enjoys no

constitutional right to participate in a corporeal line-up." *McMillan v. Berghuis*, No. 1:06-cv-057, 2009 WL 3877510, at *25 (W.D. Mich. Nov. 18, 2009); *see also*, *Morris v. Giurbino*, 162 Fed. Appx. 769, 771 (9th Cir. 2006) ("[T]he United States Supreme Court has never held that a criminal defendant has a constitutional right to a pretrial lineup"); *Reyes v. Slayton*, 341 F. Supp. 926, 927 (W.D. Va. 1972). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

F.      *Waiver of Complainant's Testimony*

1.      *Clearly Established Law*

The Sixth Amendment provides, in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him [and] to have compulsory process for obtaining witnesses in his favor[.]" U.S. CONST. amend. VI. With respect to the Confrontation Clause, under the Sixth Amendment "[a] defendant has no right to confront a 'witness' who provides no evidence at trial. Nor is the government required to call all of the witnesses to a crime." *United States v. Heck*, 499 F.2d 778, 789 n.9 (9th Cir. 1974) (citations omitted) (internal quotation omitted); *see also*, *United States v. Bryant*, 461 F.2d 912, 916 (6th Cir. 1972); *United States v. Polisi*, 416 F.2d 573, 579 (2d Cir. 1969); *Mitchell v. United States*, 359 F.2d 833, 836 n.3 (7th Cir. 1966).

2.      *Analysis*

In his habeas application, petitioner claims that the court violated his right to due process, a fair trial, and confrontation when it waived the testimony of the complainant, James McMann. However, the Confrontation Clause is not implicated here because Mr. McMann did not testify at trial. By its terms the Confrontation Clause applies only to witnesses at trial, and "a defendant has

no right to confront [a person] who provides no evidence at trial." *United States v. Francesco*, 725 F.2d 817, 822 (1st Cir. 1984); *accord Cooper v. California*, 386 U.S. 58, 62 n.2 (1967) ("Petitioner also presents the contention here that he was unconstitutionally deprived of the right to confront the witnesses against him, because the State did not produce the informant to testify against him. This contention we consider absolutely void of merit."); *United States v. Porter*, 764 F.2d 1, 9 (1st Cir. 1985); *United States v. Morgan*, 757 F.2d 1074, 1076 (10th Cir. 1985); *McAllister v. Brown*, 555 F.2d 1277, 1278 (5th Cir. 1977) (per curiam); *State v. Bard*, 448 N.W.2d 370, 374 (Wis. 1967). Thus, neither the trial court in striking Mr. McMann as a witness, nor the Michigan Court of Appeals in determining that the trial court had not erred in its decision to allow Mr. McMann to be stricken, acted contrary to or unreasonably applied federal law. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

G.      *Newly Discovered Evidence*

        1.      *Clearly Established Law*

A writ of habeas corpus may be granted "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Thus, the existence of new evidence, standing alone, is not a basis for granting the writ. As the Supreme Court has explained: "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993); *see also*, *id.* at 404 (claim of actual innocence is "not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise [procedurally] barred *constitutional* claim considered on the merits.") (emphasis added); *Schlup v. Delo*, 513 U.S. 298, 314-16 (distinguishing, in part, *Herrera* because in this case the petitioner "accompanie[d] his

claim of innocence with an assertion of constitutional error at trial."); *Townsend v. Sain*, 372 U.S. 293, 317 (1963) ("Of course, such evidence must bear upon the constitutionality of the applicant's detention; the existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus."), *overruled in part on other grounds*, *Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992).

2.    *Analysis*

In his habeas application, petitioner claims that he should be granted relief from his conviction and be given a new trial based on newly discovered evidence. The newly discovered evidence that petitioner refers to is the affidavit of Antoine Robinson. In his affidavit, Mr. Robinson claims that petitioner is neither the "Gotti" he knows, nor the person who shot Mr. McMann, and that if called as a witness he would testify to these facts. Pet'r's Br., Ex. F. In the order denying petitioner's motion for relief from judgment, Judge Hathaway described Mr. Robinson's affidavit as "newly contrived evidence." *People v. Garrett*, No. 03-12254-01 (Wayne Cty. Cir. Ct. Mich. Dec. 8, 2006). Judge Hathaway stated that even if Mr. Robinson had been called as a witness at trial, the outcome would not have changed because his testimony would have been inconsistent with the other evidence in the case. *Id.* Thus, the decision to deny petitioner's motion for relief from judgment based on this newly discovered evidence was not contrary to or an unreasonable application of established federal law. Because petitioner's claim that Mr. Robinson would present evidence of petitioner's innocence is not accompanied by a constitutional error in the underlying state criminal proceeding, petitioner does not state a ground for federal habeas relief. *See Herrera*, 506 U.S. at 400. He is merely claiming that the newly discovered evidence would prove that he is actually innocent. Accordingly, the Court should conclude that petitioner should not

be granted habeas relief on this claim.

H.      *Ineffective Assistance of Counsel Claims*

    1.      *Clearly Established Law*

The Sixth Amendment right to counsel and the corollary right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id.* at 687. These two components are mixed questions of law and fact. *See id.* at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing of one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.*

With respect to the performance prong of the inquiry, a strong presumption exists that counsel's behavior lies within the range of reasonable professional assistance. *See id.* at 689; *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.

2.      *Analysis*

    a.      *Waiver of Jury Trial*

In his habeas application, petitioner claims that his jury waiver was coerced by his trial counsel's representation that he would receive a long sentence if he exercised his right to a jury trial because he would be transferred from Judge Hathaway to Judge Townsend. Petitioner claims that he wanted a jury trial, but "he took his attorney's representations as a threat to avoid a trial before Judge Townsend." Pet'r's Br., at 10. The fact that petitioner mischaracterized his counsel's advice as a threat does make counsel's performance deficient. As in *People v. Gobold*, 230 Mich. App. 508, 512-14, 585 N.W.2d 13, 14-16 (1998), petitioner's counsel was merely providing petitioner with realistic advice to allow him to make an informed decision regarding waiver.

Further, in light of the considerable evidence of guilt presented at petitioner's trial, petitioner cannot establish that that he was prejudiced by counsel's performance, because "there is nothing in the record to indicate that . . . a *different* factfinder (i.e. a jury) would have been reasonably likely to arrive at a different outcome." *Green v. Lynaugh*, 868 F.2d 176, 178 (5th Cir. 1989); *see also*, *Spytma*, 313 F.3d at 372 (appellate counsel not ineffective for failing to raise a claim on appeal that trial counsel was ineffective for waiving jury trial; in light of overwhelming evidence of guilt, petitioner could not establish prejudice because even if appellate claim had succeeded he likely would have been convicted in subsequent jury trial). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

    b.      *Waiver of Right to Confront Complainant*

In his habeas application, petitioner claims that his trial counsel was ineffective for waiving petitioner's right of confrontation without his consent. He argues that by failing to submit the

complainant to sworn testimony and cross-examination, his trial counsel's performance was objectively unreasonable and deficient. However, as discussed above, the Confrontation Clause only applies to witnesses at trial, and "a defendant has no right to confront [a person] who provides no evidence at trial." *Francesco*, 725 F.2d at 822. Thus, petitioner's trial counsel could not have improperly waived petitioner's right to confrontation with respect to the complainant because the right to confrontation was never implicated. Further, nothing in the record indicates that Mr. McMann, a paraplegic, would have presented any exculpatory evidence. In fact, before the trial court waived McMann as a witness, petitioner's trial counsel stated that he had spoken to McMann and that McMann indicated that he had "no information that would assist us with today's hearing." Trial Tr., dated June 24, 2004, Vol. II, 4. Thus, it was not deficient for petitioner's trial counsel to choose not to demand that a witness sympathetic to the prosecution be put on the stand in front of the trier of fact. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

c.    *Failure to Investigate and Present an Exculpatory Eyewitness*

In his habeas application, petitioner claims that his trial counsel was ineffective for failing to investigate and present an exculpatory eyewitness. Antoine Robinson was originally one of three of the prosecution's endorsed witnesses. At trial, the prosecution moved to strike Mr. Robinson as a witness without any explanation. Petitioner's counsel did not object to striking Mr. Robinson as a witness, nor did he give any reason for his failure to object. Petitioner claims that his trial counsel's performance was deficient because if he had investigated Mr. Robinson he would have discovered that Mr. Robinson was an exculpatory witness. However, trial counsel's failure to fully investigate Mr. Robinson and to object to him being stricken as a witness cannot be deemed deficient performance. It was reasonable for petitioner's counsel not to spend time investigating a witness

whose original statement identified petitioner as the shooter, as well as for him not to object to having one less eyewitness called against his defendant. Petitioner has not established that there was any reason for petitioner's counsel to believe that Mr. Robinson would be able to provide any exculpatory evidence at the time of trial.

Further, petitioner cannot establish that he was prejudiced by his counsel's failure to investigate and call Mr. Robinson in light of the fact that the same trial judge who convicted petitioner at his bench trial found Mr. Robinson's affidavit to be incredible when it was presented in petitioner's motion for relief from judgment. *See Dunham v. Travis*, 313 F.3d 724, 732 (2nd Cir. 2002); *see also*, *Robinson v. Wolfenbarger*, 2006 WL 897333, at *3 (E.D. Mich. April 5, 2006) (Tarnow , J.). In ruling on petitioner's motion, Judge Hathaway stated that the outcome of the trial would not have changed if Mr. Robinson had been called as a witness. He explained that "[Mr. Robinson's] testimony would have been entirely inconsistent with all the other evidence in the case and the cross examination of him would have undoubtedly exposed his inability or unwillingness to name or identify 'the other Gotti,' a revelation which is conspicuously absent from the August 28, 2006 affidavit." Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

I.    *Evidentiary Hearing*

In his habeas application, petitioner requests that the court grant an evidentiary hearing to develop a record with respect to his jury waiver and ineffective assistance of counsel claims. In addressing whether an evidentiary hearing is appropriate in a habeas corpus case, a court must consider two separate issues: (1) whether an evidentiary hearing is necessary under Rule 8 of the Rules Governing Section 2254 Proceedings in United States District Courts, 28 U.S.C. foll. § 2254;

and (2) whether a hearing is permitted under 28 U.S.C. § 2254(e)(2). Taking the second issue first, an evidentiary hearing is permitted in this case under § 2254(e)(2). That section provides that, "[i]f the applicant has failed to develop the factual basis of the claim in State court proceedings, the court shall not hold an evidentiary hearing on a claim unless" one of two exceptions is met. 28 U.S.C. § 2254(e)(2). Here, an evidentiary hearing is permissible because petitioner has not "failed to develop the factual basis" of his ineffective assistance claim. In *Williams v. Taylor*, 529 U.S. 420 (2000), the Court explained that Congress' use of the term "'failed to develop' implies some lack of diligence [.]" *Id.* at 430. Thus, "[u]nder the opening clause of § 2254(e)(2), a failure to develop the factual basis of a claim is not established unless there is a lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Id.* at 432. Here, petitioner requested a remand for an evidentiary hearing in the Michigan Court of Appeals. Thus, petitioner did not "fail to develop" the evidence in support of his claim. *See Mayes v. Gibson*, 210 F.3d 1284, 1288 n.2 (10th Cir. 2000) (*Michael Williams* standard satisfied where petitioner "raised the need for an evidentiary hearing" on direct appeal and in collateral review proceeding); *Morales v. Coyle*, 98 F. Supp. 2d 849, 893 (N.D. Ohio 2000) (*Michael Williams* standard satisfied where petitioner sought an evidentiary hearing in state court, which was denied[.]").

However, an evidentiary hearing is not necessary to resolve petitioner's claim. In making the determination of whether an evidentiary hearing is necessary under Rule 8, "courts focus on whether a new evidentiary hearing would be meaningful, in that a new hearing would have the potential to advance the petitioner's claim." *Campbell v. Vaughn*, 209 F.3d 280, 287 (3d Cir. 2000) (discussing *Cardwell v. Greene*, 152 F.3d 331, 338 (4th Cir. 1998)); *see also*, *Alcorn v. Smith*, 781 F.2d 58, 59-60 (6th Cir. 1986) (applying pre-AEDPA law); *cf. Townsend v. Sain*, 372 U.S. 293, 312-13 (1963). Here, petitioner claims that the trial court improperly waived his right to a jury trial

and that his trial counsel was ineffective for waiving his right to confront the complainant and for failing to investigate and present Mr. Robinson. As discussed above, these claims have no merit. First, because the record indicates that petitioner's jury waiver was voluntary, knowing, and intelligent, he can present no evidence that would advance his claim that the trial court improperly waived his right to a jury trial. Second, because petitioner's right to confrontation with regard to the complainant was never implicated, he can present no evidence that would advance his claim that his trial counsel was ineffective for waiving his right to confrontation. Third, because the trial judge stated that Mr. Robinson's testimony would not have affected the outcome of petitioner's trial, petitioner can present no evidence that would advance his claim that his trial counsel was ineffective for failing to investigate and call Mr. Robinson. Accordingly, the Court should conclude that an evidentiary hearing is not necessary with respect to petitioner's involuntary waiver of jury trial claim.

J.      *Recommendation Regarding Certificate of Appealability*

        1.      *Legal Standard*

        As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability.  *See* 28 U.S.C. § 2253(c)(1).  The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack*

*v. McDaniel*, 529 U.S. 473, 483 (2000). Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84. Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable." *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue." FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments. In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

2.      *Analysis*

If the Court accepts this recommendation regarding the merits of petitioner's claims, the Court should conclude that petitioner is not entitled to a certificate of appealability. First, the record indicates that petitioner made the decision to waive his right to a jury trial voluntarily, intelligently, and knowingly. Thus, the conclusion that the trial court did not err in accepting petitioner's waiver is not reasonably debatable. Second, under the totality of the circumstances, Ms. Freund's identification of petitioner was reliable, and the weight to be given to her in-court identification was a matter for the trier of fact to assess. Thus, the conclusion that the trial court did not violate petitioner's due process rights when it rejected his request for a corporeal lineup is not reasonably debatable. Third, the complainant was never called as a witness. Thus, the conclusion that petitioner's right to confrontation could not have been violated, because it was not even implicated, is not reasonably debatable. Fourth, petitioner's new evidence of innocence is not accompanied by a constitutional error in the underlying state criminal proceeding. Thus, the conclusion that petitioner's claim of new evidence does not state a federal habeas claim is not reasonably debatable.  Fifth, petitioner has not established that his trial counsel was deficient for advising him to waive his right to a jury trial or for failing to confront the complainant because the Confrontation clause was not even implicated, nor has he established that he was prejudiced by his trial counsel's failure to investigate or call Mr. Robinson as a witness. Thus, the conclusion that petitioner was not denied effective assistance of counsel is not reasonably debatable. Though, an evidentiary hearing is permitted in this case, it is not necessary to resolve petitioner's claim. Thus, the conclusion that petitioner is not entitled to an evidentiary hearing is not reasonably debatable. Accordingly, the Court should conclude that petitioner is not entitled to a certificate of appealability.

L.      *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law.  Accordingly, the Court should deny petitioner's application for the writ of habeas corpus and conclude that petitioner is not entitled to a certificate of appealability.

III.      NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 7/29/10

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and by electronic means or U.S. Mail on July 29, 2010.

s/Eddrey Butts
Case Manager