**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

D'JUAN GARRETT,

        Petitioner,        CASE NUMBER: 09-11076
                                HONORABLE VICTORIA A. ROBERTS

v.

JOHN PRELESNIK,

        Respondent.

_____/

**OPINION AND ORDER DENYING**
**PETITION FOR WRIT OF HABEAS CORPUS**

**I.   INTRODUCTION**

This matter is before the Court on Petitioner's application for writ of habeas corpus under 28 U.S.C. § 2254.

The Court referred the application to Magistrate Judge Paul J. Komives for a Report and Recommendation (R&R). The Magistrate filed an R&R on July 29, 2010, recommending that the Court DENY the petition.

Petitioner filed objections to the R&R on August 25, 2010. Respondent did not respond.

For the reasons below, the Magistrate Judge's R&R is **ADOPTED,** and Petitioner's application for writ of habeas corpus and motion for an evidentiary hearing is **DENIED**.

**II.   FACTS**

The Court relies on the relevant facts from the Michigan Court of Appeals. These

facts are presumed correct on habeas review. *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009).

## A. Waiver of Jury Trial

Garrett was charged with intent to commit murder, felony-firearm, and being a felon in possession of a firearm in connection with the shooting of Jamie McMann in Detroit in September [2003]. Garrett was originally scheduled to have a jury trial before Wayne County Circuit Judge Michael M. Hathaway. However, on the day Garrett's trial was scheduled to start, Judge Hathaway was still presiding over another continuing jury trial. Garrett was given the choice to be transferred to another court for a jury trial or to have a bench trial with Judge Hathaway. It was proposed that if there were a bench trial, the parties would put their opening statements on the record that day and start the bench trial the next day. Garrett's attorney stated that he had spoken to Garrett without making any promises, and that Garrett preferred to stay with Judge Hathaway. Garrett was brought before Judge Hathaway, and the following exchange ensued:

*The Court*: And it's my understanding from what your lawyer just said that you wish to waive your right to a trial by jury and have a bench trial, is that correct?

*Defendant*: Yes.

*The Court*: Now you understand of course, in any kind of trial you have, you're presumed innocent until proven guilty beyond a reasonable doubt and it's the prosecutor's burden to prove you guilty beyond a reasonable doubt. But in a bench trial, or a waiver trial, I'm the only one making the decision, do you understand that?

*Defendant*: Yes.

*The Court*: There's no jury. If you had a jury trial, all twelve jurors would have to agree unanimously that you were guilty of the crime they found you guilty of, do you understand that?

*Defendant*: Yes.

*The Court*: All right, you're comfortable with a waiver trial?

*Defendant*: Yes.

*The Court*: All right, now has anybody promised you anything or

threatened you or twisted your arm in any way to get you to give up your right to a jury trial?

*Defendant*: No.

*The Court*: And nobody's told you that I would be lenient with you if you waived your right to a jury trial and give you breaks or anything?

*Defendant*: No.

*The Court*: All right, you're waiving your rights freely and voluntarily?

*Defendant*: Yes.

*The Court*: This is your signature on the waiver form?

*Defendant*: Yes.

### B. Court-Ordered Lineup

At a pretrial hearing, Garrett moved for an adjournment, in part, because he requested a court-ordered lineup. Garrett requested the lineup because he suspected witness coaching with regard to witness Jennifer Freund's identification of the shooter. The trial court denied the request for a lineup because Freund had already testified at the preliminary hearing that she knew Garrett before the shooting and, therefore, there was no reason for a lineup.

### C. Waiver of Witness

During the trial, the prosecution requested tha[t] Jamie McMann be waived as a witness. The prosecutor stated that he had spoken with McMann, and McMann had no independent recollection of the shooting. Garrett's attorney did not object to the waiver and stated that he too spoke with McMann, in the presence of McMann's mother, and that McMann indicated that he had no "information that would assist us with today's hearing."

*People v. Garrett*, 2005 WL 3478153 at *1-*2 (Mich. Ct. App. Dec. 20, 2005).

Petitioner proceeded with his waiver trial; the judge convicted him of assault with intent to commit murder and felony firearm. According to the trial evidence, Petitioner approached a car that Jamie McMann was driving, and shot him in the head three

times. Two eyewitnesses, Jennifer Freund and Vincent Johnson, were in the car at the time of the shooting. A third eyewitness, Antoine Robinson, got out seconds before the shooting. Both Freund and Johnson testified and identified Petitioner as the shooter. The prosecution waived Robinson and McMann as witnesses.

On July 15, 2004, Petitioner was sentenced to 15 to 30 years for the assault, plus a consecutive two year term for the firearm.

### III. PROCEDURAL HISTORY

Petitioner appealed his conviction to the Michigan Court of Appeals and to the Michigan Supreme Court. These appeals were denied, as were his other post-conviction proceedings.

On March 23, 2009, Petitioner filed this petition for habeas corpus, raising the following claims:

> I. His waiver of jury trial was involuntarily made;
>
> II. He was denied due process of law when his trial court denied his motion for a corporeal line-up, resulting in an in-court identification procedure that was unduly suggestive;
>
> III. He was denied his right to due process, a fair trial, and confrontation when the court waived the testimony of the complainant without his consent;
>
> IV. He was deprived of his right to effective assistance of counsel when his trial attorney waived his right to confront the complainant without his consent;
>
> V. He was deprived of his right to effective assistance of counsel when his trial attorney failed to investigate and present an eyewitness who would testify that he was not the shooter;
>
> VI. Newly discovered exculpatory evidence requires relief from his conviction as a matter of due process and a fair trial;

VII. He is entitled to an evidentiary hearing.

On July 29, 2010, the Magistrate issued an R&R recommending that the petition be denied, that an evidentiary hearing be denied, and that Petitioner not be granted a certificate of appealability.

## IV. STANDARD OF REVIEW

The Aniterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs all habeas petitions filed after its effective date. *Lindh v. Murphy,* 521 U.S. 320, 326, 327 (1997). Under AEDPA, in order to obtain habeas relief, a state prisoner must show that the state adjudication of the claim on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor,* 529 U.S. 362, 413 (2000). A decision is based on an unreasonable determination of the facts "if the state court decides a case identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

Possible error by the State court is not sufficient to justify granting the habeas

petition; the State court's application of federal law "must have been 'objectively unreasonable.'" *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (quoting *Williams*, 529 U.S. at 409). In addition, a determination of a factual issue made by a State court is presumed to be correct unless the petitioner rebuts the presumption of correctness with clear and convincing evidence. 28 U.S.C. §2254(e)(1).

V. ANALYSIS

### (A) Involuntary Waiver of Jury Trial

Petitioner claims his trial counsel told him that if he wanted a jury trial, he would be in front of Judge Townsend, and, if convicted, Judge Townsend would give him a harsh sentence. He says he wanted a jury trial, but he took his attorney's statements to be a threat to avoid Judge Townsend. He says he was coerced into waiving his right to a jury trial when he agreed to have a bench trial in order to stay in front of Judge Hathaway. In effect, Petitioner says that, his trial counsel told him he would be punished for exercising his right to a jury trial. According to Petitioner, this rendered his waiver involuntary, and rebuts the presumption that the waiver placed on the record was the product of his own free will.

The right to a jury trial is a fundamental right. *Duncan v. Louisiana,* 391 U.S. 145, 154 (1968). However, this right can be waived, as long as the waiver is made knowingly, intelligently, and voluntarily. *Spytma v. Howes,* 313 F.3d 363, 370 (6th Cir. 2002). "For waiver to be voluntary, knowing and intelligent, the defendant must possess a minimum amount of knowledge concerning his jury trial right and the mental capacity to understand the implications of waiver of that right." *Id.*

Defendant does not contest that his waiver was knowing and intelligent. He claims only that it was involuntary, because his counsel represented to him that if he asserted his right to a jury trial, he would be tried by a different judge who would give him a harsher sentence if convicted.

Defendant relies on *United States v. Jackson,* 390 U.S. 570 (1968). There the Supreme Court struck down as unconstitutional the death penalty clause of the Federal Kidnapping Act, because it allowed the death penalty to be imposed only on those defendants who exercised their right to a jury trial. If, instead, a defendant opted to waive his right to a jury trial, the death penalty could not be imposed by the judge. The Supreme Court concluded the statute impermissibly chilled defendants from exercising their right to a jury trial, and coerced defendants to waive their rights to a jury trial so that a death sentence was not a possibility. *Id.* at 851. Petitioner says that, like in *Jackson,* the representations of his attorney coerced him into waiving his right to a jury trial because he would face more prison time if he exercised this right; therefore, the waiver was involuntary.

The Court is not persuaded that the circumstances surrounding Plaintiff's jury trial waiver are analogous to *Jackson*.

Petitioner does not say that his counsel told him that a harsher sentence was mandated should he choose to exercise his right to a jury trial, or that the law allowed harsher sentences for jury trials. Instead, it appears Defendant's attorney advised him, based on his experience with Judge Townsend, that the judge sentences defendants to long terms of imprisonment. Although this advice may have had the effect of persuading Defendant that he might receive a harsher sentence for exercising his right

to a jury trial, it did not amount to coercion. The Court asked him, on the record, whether anyone threatened him to encourage the waiver of his jury trial rights. The Petitioner answered no. And, Petitioner does not argue or present evidence that Judge Townsend would have penalized him simply for exercising his right to a jury trial, or that his attorney advised him of this.

As Supreme Court cases since *Jackson* have clarified, "not every burden on the exercise of a constitutional right, and not every pressure or encouragement to waive such a right, is invalid." *Corbitt v. New Jersey,* 439 U.S. 212, 218 (1978). The possibility or risk that a defendant may receive a longer sentence from one judge than from another is not a threat against the exercise of constitutional rights. It is information that Petitioner and his attorney discussed to determine trial strategy.

Petitioner presents the Court with no facts which, if true, show that the waiver of his jury trial rights was anything but the product of his own free will. Petitioner's counsel advised him, based on his experience with the two judges, that one judge has a reputation for meting out harsher sentences than the other. While the risk his attorney pointed out may have given him more reason to choose a bench trial, it did not render his waiver involuntary. And, as the Magistrate concluded, Petitioner has no constitutional right to have a particular judge preside over his trial.

This objection is overruled.

**(B) Identification Procedure**

Defendant says the pretrial identification procedure was unduly suggestive, and that it tainted the later in-court identification during trial. Petitioner says the identification during trial did not have an independent basis, and should not have been put before the

jury.

To determine whether an identification procedure violates due process, (1) the defendant must show the identification procedure was impermissibly suggestive; and (2) if the procedure was suggestive, the court must look to the totality of the circumstances to determine if the identification was nonetheless reliable. *United States v. Meyer,* 359 F.3d 820, 824 (6th Cir. 2004). "If the defendant fails to show that the procedure was impermissibly suggestive, or if the totality of the circumstances indicates that the identification was otherwise reliable, admission of the identification testimony does not violate the defendant's right to due process." *Id.*

Petitioner says the pretrial identification by witness Freund was unduly suggestive because the identification was coached. He says that during the preliminary examination, a prosecutor asked Freund whether she could see the shooter in the courtroom, and asked Freund to point him out. Petitioner says his family members saw a prosecutor nod his head toward Petitioner, indicating that he was the shooter.

Petitioner argues Freund should not have been permitted to identify him in court. He says this preliminary examination identification was impermissibly suggestive, and it tainted the identification during trial.

However, Petitioner bears the burden to prove the identification was impermissibly suggestive. He presents no statements or offers of proof from the family members who allegedly saw the coaching. Moreover, Freund testified she knew Petitioner, including what he looked like and how his voice sounded, before the shooting. Thus, it seems unlikely that Freund needed coaching to identify him.

Even if this Court assumes, for the sake of argument, that the preliminary

examination identification was impermissibly suggestive, Petitioner is not entitled to relief if the in court identification at trial was independently reliable.

To determine whether the trial identification is independently reliable, the Court must look at the totality of the circumstances. *Neil v. Biggers,* 409 U.S. 188, 199 (1972). This includes: (1) "the opportunity of the witness to view the criminal at the time of the crime," (2) "the witness' degree of attention," (3) "the accuracy of the witness' prior description of the criminal," (4) "the level of certainty demonstrated by the witness at the confrontation," and (5) "the length of time between the crime and the confrontation." *Id.* at 199-200.

Petitioner says that Freund had very little opportunity to view the shooter at the time of the crime because he wore a hooded sweatshirt. Petitioner also emphasizes that Freund admitted to using cocaine before the shooting. Additionally, Petitioner says Freund's initial description of the shooter did not match Petitioner.

However, Freund knew Petitioner before the shooting, and said she recognized his face and voice. She said she was absolutely sure it was him. Despite Petitioner's claim that a hood covered the shooter's face, Freund testified the hood did not cover his face and she could see his braided hair. She also testified she heard him say, "I told you so," as he shot McMann, and she recognized his voice. Moreover, Freund testified she may have ingested cocaine the night before, but not the next day. And, although Freund arguably gave police a description of the shooter immediately after the incident that was inconsistent with her later description in some respects, she, on the same day, gave a description of the shooter that was not inconsistent with the later description. In fact, the trial judge made an explicit finding that he found Freund very credible, and was

"inclined to believe that the police officers probably screwed up the information that she gave them." Trial Transcript, vol. II at 78, June 24, 2004. Under the totality of these circumstances, it is not an unreasonable application of clearly established federal law for the state courts to find that the identification at trial was independently reliable.

This objection is overruled.

### (C) Confrontation of the Complainant/Victim

Petitioner claims his confrontation rights were violated when the prosecution waived the testimony of the victim, James McCann, and his attorney failed to object. Petitioner says he had a "personal" right to decide whether the testimony of McCann could be waived. He says he has a right to confront McCann, and any waiver of this right required his personal assent.

The Sixth Amendment says: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted by the witnesses against him." The Supreme Court holds that testimonial statements admitted into evidence cause the declarant to be a "witness" within the meaning of the confrontation clause, and the Sixth Amendment gives the accused the right to confront that witness. *Davis v. Washington,* 547 U.S. 813, 821 (2006).

Petitioner says he has an absolute right to confront the "complainant." He says his attorney could not assent to the waiver of the complainant as a witness without his personal assent.

However, Petition cites no cases indicating that he has the right to confront a person who does not provide testimony against him. And, he fails to point to any statements from the victim that were admitted against him. It appears that Petitioner

believes he has a constitutional right to have the victim testify. As the Magistrate concluded, because there is no indication that the victim was a witness against Petitioner as contemplated by the Sixth Amendment, Petitioner had no constitutional right to confront him. Accordingly, his attorney did not impermissibly waive this right. This claim is without merit.

To the extent that Petitioner claims it was a violation of his constitutional rights for the prosecution to decline to call the complainant/victim as a witness, this claim is without merit. "The Sixth Amendment right of confrontation does not impose upon the Government the duty to call a particular witness." *United States v. Bryant,* 461 F.2d 912, 916 (6th Cir. 1972).

Finally, in objecting to the Magistrate's R&R, the Petitioner raises a new argument–that the victim's inability to identify the Petitioner as the shooter was exculpatory evidence under *Brady v. Maryland,* 373 U.S. 83 (1973), and the prosecution was required to produce the victim for testimony. The Court declines to address this argument; it is not presented in the application for habeas relief.

These objections are overruled.

**(D) Ineffective Assistance of Counsel**

The Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const., amend. VI. This Sixth Amendment right to counsel is the right to effective assistance of counsel. *See Strickland v. Washington,* 466 U.S. 668, 685 (1984).

The United States Supreme Court has set forth a two part test for determining

whether a habeas petitioner has received constitutionally ineffective assistance of counsel. First, Petitioner must prove that his attorney's performance was deficient. *Mason v. Mitchell*, 320 F.3d 604, 616 (6th Cir. 2003) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). An attorney's performance is deficient if it falls below an objective standard of reasonableness. *Id.* However, "[t]he objective standard of reasonableness is a highly deferential one and includes 'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Id.* at 616-17 (quoting *Strickland v. Washington*, 466 U.S. 668, 689 (1984)).

Second, Petitioner must show that he was prejudiced by this deficiency. *Mason v. Mitchell*, 320 F.3d 604, 616 (6th Cir. 2003) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). To prove prejudice, Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). "[A] 'reasonable probability' does not mean a certainty, or even a preponderant likelihood, of a different outcome, nor even more, that no rational juror could constitutionally find [the defendant] guilty." *Matthews v. Abramajtys*, 319 F.3d 780, 790 (6th Cir. 2003) (internal citation omitted).

### 1. Waiver of Jury Trial

Petitioner says his attorney coerced him into waiving his jury trial. He says this coercive conduct was deficient performance under the first prong of *Strickland.*

Petitioner says that the day his jury was to begin, his attorney told him that if he wanted a jury trial, his case would be sent to another judge. His attorney also told him

that the judge that would preside over his jury trial would give him a long sentence if convicted. However, he says his attorney told him that if he elected to have a bench trial, he could stay in front of the judge to which his case was originally assigned. He says that he wanted a jury trial, but he construed his attorney's statements as a threat. He says that he did not waive his jury trial freely and voluntarily.

Although Petitioner may have viewed this as a threat, the Court does not. The trial judge asked him, on the record, whether anyone had threatened him to encourage him to waive his jury trial rights. The Petitioner answered no.

Moreover, nothing Petitioner says suggests his attorney performed deficiently when advising him of the possible consequences of being tried before a different judge. Nor does Petitioner show that it was it objectively unreasonable to recommend a bench trial under the circumstances. *See Willis v. Smith,* 351 F.3d 741 (6th Cir. 2003) (Petitioner's counsel was not ineffective for recommending a bench trial instead of a jury trial; petitioner's attorney could have reasonably believed that it was better strategy to be tried by a judge rather than a jury.). In fact, Petitioner's only claim seems to be that the attorney's advice was coercive in nature. The Court disagrees.

This claim is without merit, and the objection is overruled.

**2. Failure to Call Victim as Witness & Failure to Object to Prosecution's Request to Waive Victim as Witness**

Petitioner says his attorney was ineffective because he failed to call the victim as a witness, and failed to object when the prosecution waived the victim as a witness. Petitioner says he had a personal right to decide whether the victim would be called,

and says that his attorney could not waive this right.

While decisions as to what evidence to present and whether to call certain witnesses are generally presumed to be a matter of trial strategy, the failure to call witnesses or present other evidence may constitute ineffective assistance of counsel when it deprives a defendant of a substantial defense. *See Martinez v. Scutt,* 2011 WL 1193210 at *25 (E.D. Mich. 2011); *Chegwidden v. Kapture,* 92 Fed. Appx. 309, 311 (6th Cir. 2004). "An attorney's failure to present available exculpatory evidence is ordinarily deficient, unless some cogent tactical or other consideration justified it." *Caldwell v. Lewis,* 2011 WL 915764 at *6 (6th Cir. March 16, 2011) (quoting *Pavel v. Hollins,* 261 F.3d 210, 220 (2d Cir. 2001) (internal quotes omitted). Furthermore, even when making strategic decisions, counsel's conduct must be reasonable. Therefore, the relevant issue before the Court "is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega,* 528 U.S. 470, 481 (2000).

As discussed earlier, Petitioner has no confrontation rights with respect to a witness whose testimony is not admitted into evidence. Thus, to the extent that Petitioner claims his attorney needed his consent to waive these rights, the claim is without merit.

Moreover, to the extent Petitioner brings a claim that his attorney was ineffective for failing to call the victim as a witness or object when the prosecution waived him as a witness, the Court disagrees.

The decision to call or not to call a witness, is trial strategy. Here, the trial attorney's decision to not call the victim as a witness was reasonable. Although the victim was at the trial, the prosecution asked the Court to waive him as a witness.

Defendant's attorney did not object to this because, after speaking with McMann, he came to the conclusion that McMann did not remember the shooting due to his injuries. McMann was shot in the head three times and was rendered quadriplegic. Under these circumstances, it was not unreasonable for his attorney to decline to call McMann as a witness–McMann had no relevant evidence, and his injuries were sympathetic to the prosecution.

### 3. Failure to Investigate

Petitioner says his trial counsel was ineffective for failing to conduct a reasonable investigation into what an eyewitness, Antoine Robinson, would have testified to at trial. At the time of the shooting, Petitioner was known by the alias "Gotti." Petitioner says that although Robinson gave a witness statement to police identifying Gotti as the shooter, he later said Petitioner is not the same "Gotti" that he meant to identify. Petitioner says that if his trial counsel investigated Robinson properly, he would have discovered that Robinson was actually an exculpatory witness.

Robinson was originally on the prosecution's list of witnesses. At trial, the prosecution moved to strike Robinson as a witness without any explanation. Petitioner's attorney did not object. Petitioner says his trial counsel should have investigated Robinson to find out why the prosecution declined to use him. Petitioner implies the prosecution waived Robinson because it became apparent that the "Gotti" Robinson identified was not Petitioner.

Petitioner presents an affidavit from Robinson. The affidavit says Robinson was in the car with the victim a few seconds before the shooting. After the shooting Robinson gave a statement to police identifying the shooter as "Gotti," a man he knew

from his neighborhood. He says the Gotti he knows and identified is not Petitioner, and Petitioner is not the individual who shot McMann.

Petitioner says Robinson was an exculpatory witness, and his attorney would have figured that out had he done a proper investigation.

"There can be no question that the failure to reasonably investigate potentially exculpatory witnesses satisfies the deficiency prong of the *Strickland* test." *Clark v. Redman,* 865 F.2d 257 (6th Cir. 1988). It is well established that counsel has a duty to conduct a reasonable investigation into the facts of a defendant's case, or to make a reasonable determination that an investigation is unnecessary. *See Wiggins v. Smith,* 539 U.S. 510, 522-23 (2003). The duty to investigate "includes the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence." *Towns v. Smith,* 395 F.3d 251, 258 (6th Cir. 2005).

The Court declines to determine whether Petitioner's counsel was deficient, because even assuming a deficient investigation, Petitioner cannot show he was prejudiced by this deficiency.

To prove prejudice, Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v. Washington*, 466 U.S. 668, 694 (1984).

Even if the Court assumes that Robinson would have testified at trial that another Gotti, not Petitioner, was the shooter, two other eyewitnesses identified Petitioner as the shooter. Despite Petitioner's arguments that these eyewitnesses were not credible, the trial judge, as the finder of fact, determined otherwise. Moreover, the trial judge, when

presented with Robinson's affidavit on a motion for relief from judgment, stated:

> Finally, as the trier of fact in this matter, this writer can say with confidence that even if Antoine Robinson had been called as a witness in July 2004 and testified consistent with his new affidavit, that it would not have changed the outcome. His testimony would have been entirely inconsistent with all of the other evidence in the case . . . .

Petitioner is unable to establish that, but for his attorney's failure to investigate and call Robinson as an exculpatory witness, he would not have been convicted. *See Dunham v. Travis,* 313 F.3d 724, 732 (2nd Cir. 2002) (lack of prejudice confirmed when same trial judge who convicted petitioner at bench trial was unpersuaded by evidence later raised in post conviction motion); *Price v. Romanowski,* 2008 WL 186361 (E.D. Mich Jan. 22, 2008) (petitioner unable to show prejudice where same trial judge who convicted petitioner at bench trial reviewed petitioner's proposed evidence in a post-conviction motion, and indicated it would not have changed the outcome); *Robinson v. Wolfenbarger,* 2006 WL 897333 at *3 (E.D. Mich. April 5, 2006) ("petitioner is unable to show that he was prejudiced by counsel's alleged ineffectiveness in light of the fact that the same trial judge that convicted petitioner at his bench trial was 'unmoved' by this additional evidence when it was presented to him in petitioner's post-trial motion").

Because Petitioner cannot meet his burden under *Strickland* to show that the failure to call and investigate Robinson as a witness prejudiced him, this claim fails.

**(E) Actual Innocence**

Petitioner also claims the testimony of Robinson is newly discovered evidence of his actual innocence. However, "a claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Herrera v.*

*Collins,* 506 U.S. 390, 404 (1993). Because Petitioner's constitutional claims fail on the merits, the Court declines to consider this claim; "claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Id.* at 400.

**VI.    Conclusion**

Petitioner's objections are **OVERRULED**; the Court **ADOPTS** the R&R.

Petitioner's Application for Writ of Habeas Corpus is **DENIED**.

For the reasons stated in the R&R, Petitioner is not entitled to a certificate of appealability.

**IT IS ORDERED**.

/s/ Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: June 28, 2011

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on June 28, 2011.

s/Linda Vertriest
Deputy Clerk